[Cite as *State v. Brown*, 2021-Ohio-3348.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110192 |
| v. | : | |
| RANDOLPH BROWN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** September 23, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-648997-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Melissa Riley, Assistant Prosecuting
Attorney, *for appellee.*

Wesley A. Dumas, Sr., *for appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant, Randolph Brown, appeals the trial court's denial of his motion to dismiss the indictment against him and the trial court's calculation of jail-time credit. He raises two assignments of error for our review:

1. Compelling prostitution as indicted violates the due process clause of the United States constitution and is void for vagueness requiring the lower court to have granted defendant's motion to dismiss.

2. The lower court failed to calculate proper credit for jail time for which the defendant should have been credited.

We note that after Brown filed his appellate brief, the trial court granted Brown jail-time credit for the days he spent on GPS home monitoring.

{¶ 2} We find that R.C. 2907.21(A)(3)(a) is constitutional and affirm the trial court's denial of Brown's motion to dismiss. We also find that Brown is not entitled to jail-time credit for the days he spent subject to GPS home monitoring. We therefore affirm the trial court's original sentencing entry granting him only three days of jail-time credit. But we vacate, however, the trial court's order granting him additional jail-time credit for the days he spent subject to GPS home monitoring.

## I.    Procedural History and Factual Background

{¶ 3} In February 2020, Brown was indicted with two counts of compelling prostitution in violation of R.C. 2907.21(A)(3)(a), third-degree felonies. He entered a plea of not guilty to both counts. At the arraignment, Brown's bond was set at $100,000 "cash/surety/property." As conditions of bond, the trial court ordered Brown to have no contact with the victims and placed him on court-supervised release with GPS home monitoring, "no movement without prior court approval." Brown posted bond.

{¶ 4} In March 2020, Brown filed a motion to reduce his bond amount to $10,000 and to remove the bond conditions. In the motion, Brown highlighted that

he was 64 years old and had been a church pastor since 1991.  After full briefing, the trial court denied his motion without opinion.

{¶ 5}  In May 2020, Brown filed a motion to dismiss both counts of the indictment, arguing that R.C. 2907.21(A)(3)(a) is void for vagueness in violation of the Due Process Clause of the Fifth and Fourteenth amendments to the U.S. Constitution.  After full briefing, the trial court denied the motion without opinion.

{¶ 6}  In November 2020, the trial court held a plea hearing for Brown and his codefendant.  Defense counsel indicated Brown's intention to withdraw his plea of not guilty and instead to enter a plea of no contest to both counts of compelling prostitution so that he would be able to appeal the trial court's denial of his motion to dismiss.  The trial court and Brown engaged in the Crim.R. 11 colloquy.

{¶ 7}  The trial court then asked the prosecutor to put the facts on the record.  The prosecutor explained that both victims were reported as juvenile runaways in August 2018.  S.Y., who was 14 years old at the time, was "recovered" in October 2018 and reported to police that between August and October 2018, Brown paid her to engage in vaginal sex.  She also reported that Brown paid his co-defendant, Joyce Richmond, who set up S.Y. and Brown.  V.P., who was 16 years old at the time, was "recovered" in November 2018 and reported to police that between August and November 2018, Brown paid her to engage in vaginal sex.  She also reported that Brown paid Richmond to connect them.

{¶ 8}  Defense counsel waived "any statement" regarding the prosecutor's summary of the facts.  The trial court asked Brown how he wanted to plead to each

count of compelling prostitution, and Brown stated that he pleaded no contest to both counts. The trial court accepted his pleas and found him guilty of both counts.

{¶ 9} At the hearing, defense counsel orally moved for modification of the conditions of his bond. He explained that Brown had complied with his bond conditions to date, that he was a visible member of the community, and there was "little, if any" chance that he would not return to court. Brown explained that he wanted the GPS monitor removed so he could run his "errands." He said that "for the first three months, [he] wasn't allowed to go anywhere." At the time of the hearing, Brown said that he could go only to his "mental health appointments" and his counselor with 48 hours advance notice. He had not "been able to go to worship" or "to do anything." The state took no position as to the motion, and the trial court granted the motion.

{¶ 10} The trial court referred Brown to the probation department for a presentence investigation report. The report states that according to the Human Trafficking Task Force report, both victims identified Brown in a photo lineup and identified him as Richmond's pastor. V.P. wrote on the photo lineup where she circled Brown's photo: "I know him because he drove me to a motel in East Cleveland and paid me for having sex with him. Vaginal sex. I remember his last name was Brown[,] and Joyce later told me that was her preacher." S.Y. wrote on the photo lineup where she circled Brown's name: "He is a pastor, 100% positive."

{¶ 11} On December 9, 2020, the trial court held a sentencing hearing. The trial court sentenced Brown to 18 months in prison for each count, to run

concurrently to each other for a total term of 18 months. The trial court informed Brown that upon release from prison he will be subject to mandatory 5 years of postrelease control and notified him of the consequences if he were to violate the terms. The trial court notified Brown that he was classified as a Tier II sex offender and explained his registration duties. The trial court also determined that Brown was entitled to 3 days of jail-time credit and imposed court costs. Defense counsel orally moved for the court to extend Brown's bond pending appeal. The state objected, and the trial court denied the motion.

{¶ 12} According to the parties' briefs and a trial court journal entry in March 2021, on December 11, 2020, Brown filed a motion for a correction of jail-time credit. The motion itself does not appear to be in the record. The record does not reflect that the state filed an opposition to this motion.

{¶ 13} A few days later, the trial court entered an order granting Brown a personal bond until April 2021, due to "the complications and effects of Covid-19 in the Cuyahoga County Jail[.]" The court set bond at $5,000 with the conditions of court-supervised release, GPS curfew monitoring, and no contact with the victims. Brown posted bond the same day. The trial court later amended the judgment and ordered Brown to self-report to the sheriff's department to be transported to prison the following month.

{¶ 14} On December 28, 2020, Brown timely appealed the sentencing entry. Brown filed in this court a motion to stay the execution of his sentence pending appeal, and this court denied his motion.

{¶ 15} Over two months later, after Brown filed his appellate brief but before he filed his reply brief in this court, our certified record reflects that the trial court entered a judgment granting Brown's "motion for correction of jail time credit, filed 12/11/2020[.]"  The trial court ordered that Brown "is entitled to receive 289 days of total jail time credit."

## II.  Constitutionality of R.C. 2907.21(A)(3)(a)

{¶ 16} In his first assignment of error, Brown argues that the trial court violated his right to due process under the U.S. Constitution when it denied his motion to dismiss because R.C. 2907.21(A)(3)(a) is unconstitutionally vague.  He contends that the statute is vague because it does not specifically define the age of a "minor" and because an offender can be convicted even if he or she does not know the age of the victim.

{¶ 17} We first note that there is a strong presumption in favor of the constitutionality of statutes.  *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991).  The party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt.  *Id.*

{¶ 18} "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'"  *Johnson v. U.S.*, 576 U.S. 591, 595, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).  To survive a void-for-vagueness challenge, "the statute must be written so

that a person of common intelligence is able to determine what conduct is prohibited, and secondly, the statute must provide sufficient standards to prevent arbitrary or discriminatory enforcement." *State v. Baumgartner*, 8th Dist. Cuyahoga Nos. 89190, 91027, and 91028, 2009-Ohio-624, ¶ 42, citing *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000).

{¶ 19} The Ohio Supreme Court has explained the rationale for the "void for vagueness" doctrine as follows:

> Three "values" rationales are advanced to support the "void for vagueness" doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited.

*State v. Tanner*, 14 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984).

{¶ 20} R.C. 2907.21(A)(3)(a) states that "[n]o person shall knowingly * * * [p]ay or agree to pay a minor, either directly or through the minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor[.]"

{¶ 21} Brown first argues that R.C. 2907.21(A)(3)(a) is unconstitutionally vague because the term "minor" is not defined. He compares this to other criminal statutes that identify specific ages. He relies on statutes including R.C. 2907.02, which sets penalties for rape depending on the victim's age, and R.C. 2907.03, which states that the penalty for sexual battery depends on if the victim is under 13 years

old. Brown maintains that when comparing the compelling prostitution statute to the specific age parameters in "companion statutes," the compelling prostitution statute is purposefully vague and not subject to reasonable understanding. We disagree. R.C. 2907.01(M), which sets forth the definitions used in R.C. 2907.01 to 2907.38, specifically defines "minor" as "a person under the age of eighteen."

{¶ 22} Next, Brown contends that R.C. 2907.21(A)(3)(a) is unconstitutionally vague because it punishes conduct even if the offender does not know the age of the victim. He maintains that, hypothetically, if an offender were to seek sex with someone the offender believes to be a minor, but the victim was actually an adult, the offender could still be charged with compelling prostitution under R.C. 2907.21(A)(3)(a). Brown points out that the penalties for paying to have sex with a minor are significantly higher than paying to have sex with an adult, and offenders are subject to the "whim of law enforcement" as to which statute they are charged under.

{¶ 23} However, if an offender were to knowingly pay or agree to pay someone for sex, and that person were not a minor, the elements for compelling prostitution under R.C. 2907.21(A)(3)(a) would not be met. Brown's argument seems to be directed at the language of R.C. 2907.21(A)(3)(b), which states that no person shall knowingly "[p]ay or agree to pay a person the offender believes to be a minor, either directly or through the person's agent, so that the person will engage in sexual activity, whether or not the person is a minor." But Brown was not charged or convicted under R.C. 2907.21(A)(3)(b).

{¶ 24} Brown has not met his burden to show that R.C. 2907.21(A)(3)(a) is unconstitutional beyond a reasonable doubt. He has not established that R.C. 2907.21(A)(3)(a) fails to provide fair warning to citizens of the prohibited conduct, that R.C. 2907.21(A)(3)(a) is being used for arbitrary enforcement, or that R.C. 2907.21(A)(3)(a) impinges upon fundamental constitutionally protected freedoms.

{¶ 25} Accordingly, we overrule Brown's first assignment of error.

### III. Jail-Time Credit

{¶ 26} In his second assignment of error, Brown argues that the trial court erred when it determined that he was entitled to only 3 days of jail-time credit. He contends that his GPS home monitoring was essentially incarceration because he was prohibited from leaving his home altogether for the first 90 days, and thereafter was permitted only "extremely limited supervised movement." Brown maintains that he should be given credit for the 253 days that he was subject to the GPS home monitoring.

{¶ 27} After Brown appealed from the trial court's sentencing judgment, the trial court granted Brown's motion to correct jail-time credit and awarded him credit for 289 days. Even though the trial court entered this judgment after Brown filed his notice of appeal, the judgment appears in our certified record, Brown addressed it in his reply brief, and it was discussed in oral argument. However, the trial court had no authority to modify its sentencing judgment or grant Brown's motion to correct jail-time credit after Brown filed the notice of appeal. It is well settled that

"the filing of the notice of appeal divests the trial court of jurisdiction to proceed with the adjudication during the pendency of the appeal." *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 16.

{¶ 28} Even if the trial court's judgment granting Brown 289 days of jail-time credit were valid, the order would have been in error. R.C. 2967.191(A) governs jail-time credit related to prison terms:

> The department of rehabilitation and correction shall reduce the prison term of a prisoner, as described in division (B) of this section, by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court * * * and confinement in a juvenile facility[.]

{¶ 29} The Ohio Supreme Court recently analyzed R.C. 2967.191(A) and found that "[t]he legislature has expressed the intent that credit is to be given only for the time the defendant is confined in a public or private facility. Confinement in a personal residence, therefore, does not qualify under the statute." *State v. Reed*, 162 Ohio St.3d 554, 2020-Ohio-4255, 166 N.E.3d 1106, ¶ 16. The court therefore held that the defendant was not entitled to jail-time credit for the time he spent on postconviction electronically monitored house arrest. *Id.* at ¶ 19.

{¶ 30} Although the Ohio Supreme Court's holding applied specifically to postconviction house arrest, its reasoning that only confinement in a public or

private facility counts for the calculation of jail-time credit likewise extends to time spent on house arrest before conviction. *See State v. Nichols*, 2d Dist. Champaign No. 2020-CA-2, 2020-Ohio-4596, ¶ 16 (applying *Reed* and holding that the defendant was not entitled to jail-time credit for the days he was subject to house arrest preconviction). This is consistent with previous Eighth District cases finding that "[t]he imposition of house arrest with electronic monitoring does not constitute a term of imprisonment[.]" *State v. Wilkins*, 8th Dist. Cuyahoga Nos. 108101 and 108102, 2019-Ohio-4679, ¶ 13, quoting *State v. Curry*, 8th Dist. Cuyahoga No. 105203, 2018-Ohio-4771, ¶ 64.

{¶ 31} Brown relies on *Independence v. Corradetti*, 8th Dist. Cuyahoga No. 108554, 2020-Ohio-2823, to argue that he should be entitled to jail-time credit. In *Corradetti*, we held that under the circumstances in that case, the defendant was entitled to jail-time credit for the days he spent on house arrest. *Id.* at ¶ 16. In their appellate briefs, the parties compare the facts of *Corradetti* to the facts of Brown's case to advocate for why we should or should not follow *Corradetti's* holding here. However, a few months after we released *Corradetti*, the Ohio Supreme Court released *Reed*. Accordingly, regardless of the similarities or differences between the circumstances of Brown's GPS home monitoring and those in *Corradetti*, we must instead apply the Ohio Supreme Court's reasoning in *Reed*.

{¶ 32} Brown's GPS home monitoring was not confinement in a public or private facility, and his time spent on GPS home monitoring is therefore not "confinement" within the meaning of R.C. 2967.191(A). Accordingly, we find that

Brown is not entitled to jail-time credit for the days he was subject to the GPS home monitoring. The trial court did not err in its December 9, 2020 sentencing entry.

{¶ 33} The trial court's order denying Brown's motion to dismiss is affirmed. The trial court's December 9, 2020 sentencing entry granting Brown three days of jail-time credit is also affirmed. The trial court's March 17, 2021 judgment granting Brown 289 days of jail-time credit is vacated.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN T. GALLAGHER, J., CONCUR